LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JACKELINE ALMEIDA, and JOHN
A.E.R. DOE, a minor, individually and
as a successor-in-interest to ALAN
RAMOS, by and through his guardian
ad litem, ROCIO DIAZ.

        Plaintiffs,

    vs.

CITY OF LONG BEACH; and DOES 1
through 10, inclusive,

      Defendants.

**Case No.  2:19-cv-8391**

**COMPLAINT FOR DAMAGES**
1. Fourth Amendment, Detention and Arrest (42 U.S.C. § 1983)
2. Fourth Amendment, Excessive use of Force (42 U.S.C. § 1983)
3. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)
4. Fourteenth Amendment, Interference with Familial Relations (42 U.S.C. § 1983)
5. Municipal Liability, Ratification (42 U.S.C. § 1983)
6. Municipal Liability, Inadequate Training (42 U.S.C. § 1983)
7. Municipal Liability, Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
8. False Arrest/False Imprisonment
9. Battery (Wrongful Death)
10. Negligence (Wrongful Death)
11. Violation of Bane Act (Cal. Civil Code § 52.1)

**[DEMAND FOR JURY TRIAL]**

**INTRODUCTION**

This is a civil rights in-custody death case regarding the death of Alan Ramos ("DECEDENT") a 25 year-old Hispanic male, who died approximately 24 hours after being arrested by, and taken into the custody by the City of Long Beach Police Department. Plaintiff John A.E.R. Doe is the DECEDENT'S minor son and brings survival claims on the DECEDENT'S behalf as his lawful successor-in-interest and on his own behalf in his individual capacity for wrongful death. Plaintiff JACKELINE ALMEIDA is the DECEDENT's mother and brings this claim in her individual capacity for wrongful death. Plaintiffs bring claims and seek damages under state and federal constitutional, statutory, and common law. Plaintiffs also seek costs and reasonable attorneys' fees.

**VENUE AND JURISDICTION**

This civil action is brought to redress violations of the laws of the State of California and the Fourth and Fourteenth Amendments of the United States Constitution as protected by 42 U.S.C. §§ 1983 and 1988. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in and all incidents, events, and occurrences giving rise to this action occurred in the County of LONG BEACH, State of California, which is located in this Central District of California.

**PARTIES**

1.     Alan Ramos is the DECEDENT.  Mr. Ramos died on November 11, 2018 while in the custody of the City of Long Beach Police Department.  Mr. Ramos's death was proximately caused by the negligence and inadequate care provided by the City of Long Beach, and the Long Beach Police Department, from the time of his arrest, at approximately 12:40 a.m., on November 10, 2018, to the time of his death, which occurred sometime between 3:00 p.m. and 5:00 p.m. on November 11, 2018.

2.      Plaintiff JOHN A.E.R. DOE ("A.E.R.") is the DECEDENT'S minor son and brings survival claims in a representative capacity on the DECEDENT'S behalf as his lawful successor in interest pursuant to California Code of Civil Procedure §377.30 and § 377.60. Plaintiff "A.E.R." also brings claims on his own behalf in his individual capacity for wrongful death. Plaintiff "A.E.R." seeks both survival and wrongful death damages under federal and state law.

3.      Plaintiff JACKELINE ALMEIDA ("ALMEIDA") is an individual residing in the City of Long Beach, California and is the mother of DECEDENT. ALMEIDA sues both in her individual capacity as the mother of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.60. ALMEIDA seeks both survival and wrongful death damages under federal and state law.

4.      At all relevant times, Defendant CITY OF LONG BEACH ("CITY") was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Long Beach Police Department ("LBPD") and its agents and employees.  At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of Defendants DOES 1 through 10.

5.      At all relevant times, DOES 1 through 10 were City of Long Beach police officers, employees, and agents of Defendant CITY or were police officers, staff members, employees, and agents of the custodial facilities located in the City of Long Beach and which were owned, maintained, controlled, and supervised by CITY and their law enforcement agency, respectively.  DOES 1 through 10, inclusive, and each of them, were individuals engaged in the operation, business, and/or

1  management of the custodial and/or jail facility and/or were engaged in the provision
2  of services, medical care, protection, administration, and daily needs to inmates at the
3  custodial facilities within the CITY where Decedent was held from the time of his
4  arrest to the time of his death.

5       6.    DOES 1 through 10, inclusive, are those persons or entities who used
6  force against DECEDENT and/or who integrally participated in and/or failed to
7  intervene in the use of force against the DECEDENT, and who therefore proximately
8  caused the injuries and damages alleged herein. The true names and/or capacities of
9  Defendants, DOES 1 through 10, inclusive, and each of them, are presently unknown
10  to Plaintiff, who therefore sues said Defendants by their fictitious names. Plaintiffs
11  will seek leave of Court to amend this Complaint and state the true names and/or
12  capacities of such fictitiously named Defendants when the same have been
13  ascertained.

14       7.    Defendants, and each of them, were the agents, employees and servants
15  of each other and were acting at all times within the full course and scope of their
16  agency with and employment by the CITY, with the full knowledge and consent,
17  either expressed or implied, of their principal and/or employer (CITY) and each of
18  the Defendants approved or ratified the actions of the other Defendants thereby
19  making the currently named Defendants herein liable for the acts and/or omissions of
20  their agents, servants and/or employees.

21       8.    At all times mentioned herein, each and every Defendant was the agent
22  of each and every other Defendant and had the legal duty to oversee and supervise
23  the hiring, conduct, and employment of each and every Defendant.

24       9.    All of the acts complained of herein by Plaintiffs against Defendants
25  were done and performed by said Defendants by and through their authorized agents,
26  servants, and/or employees, all of whom at all relevant times herein were acting
27  within the course, purpose, and scope of said agency, service, and/or employment
28  capacity, and under the color of law. Moreover, Defendants and their agents ratified

management of the custodial and/or jail facility and/or were engaged in the provision of services, medical care, protection, administration, and daily needs to inmates at the custodial facilities within the CITY where Decedent was held from the time of his arrest to the time of his death.

6.     DOES 1 through 10, inclusive, are those persons or entities who used force against DECEDENT and/or who integrally participated in and/or failed to intervene in the use of force against the DECEDENT, and who therefore proximately caused the injuries and damages alleged herein. The true names and/or capacities of Defendants, DOES 1 through 10, inclusive, and each of them, are presently unknown to Plaintiff, who therefore sues said Defendants by their fictitious names. Plaintiffs will seek leave of Court to amend this Complaint and state the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

7.     Defendants, and each of them, were the agents, employees and servants of each other and were acting at all times within the full course and scope of their agency with and employment by the CITY, with the full knowledge and consent, either expressed or implied, of their principal and/or employer (CITY) and each of the Defendants approved or ratified the actions of the other Defendants thereby making the currently named Defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

8.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

9.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity, and under the color of law. Moreover, Defendants and their agents ratified

1   all of the acts complained of herein.

2       10.    On or about April 29, 2019, pursuant to Government Code Section 910,

3   Plaintiff ALMEIDA presented a claim to the City of Long Beach in full and timely

4   compliance with the California Tort Claim Act.  On August 1, 2019, Plaintiff

5   ALMEIDA's claim was rejected by Defendant CITY.

6       11.    On or about June 18, 2019, pursuant to Government Code Section 911.4,

7   the Plaintiff filed for permission to present a late claim to the City of Long Beach. On

8   or about June 26, 2019, pursuant to Government Code Section 911.4, Plaintiff A.R.

9   presented a claim to the City of Long Beach. On August 1, 2019, Plaintiff A.R.'s

10   claim was returned under Government Code §§ 901 and 911.1, and the CITY alleges

11   that the claim not presented within six (6) months after an event or occurrence as

12   required by law.

13   **<u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>**

14       12.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

15   through 11 of this complaint with the same force and effect as if fully set forth herein.

16       13.    On November 11, 2018, the Decedent Alan Ramos was wrongfully tased

17   and killed by Long Beach Police Officers, DOES 1 through 10, who unjustifiably

18   used excessive deadly force when they fired their Taser darts and/or used their Taser

19   in stun mode upon DECEDENT. Defendants DOES 1 through 10 resorted to the use

20   of a Taser gun when other less than lethal means could have and should have been

21   used. In Defendants' attempt to effectuate control within a jail cell where the

22   DECEDENT was housed, Defendants DOES 1 through 10 tased the DECEDENT

23   with a Taser gun <u>multiple times</u>, thereby causing the untimely death of DECEDENT.

24   DOES 1 through 10's wrongful use of a Taser gun against the DECEDENT was an

25   intentional and/or negligent use of excessive force against him. The excessive use of

26   a Taser gun against the DECEDENT caused him to suffer the negative effects of a

27   Taser gun which in turn caused him to become unresponsive, ultimately causing his

28   untimely death.

14.   Defendants DOES 1 through 10 excessive use of a Taser gun was the actual and proximate cause of DECEDENT's death.

15.   DECEDENT, who was <u>unarmed</u> and within a controlled setting of a jail cell, was not committing any crime, had not threatened anyone, was not about to harm anyone, and posed no imminent threat of death or serious bodily injury to anyone.  As a result of the use of excessive force upon the DECEDENT, he endured severe pain and suffering, suffered blunt force trauma to his body with the Taser darts and ultimately succumbed to the injuries inflicted upon him by DOES 1 through 10.

16.   The use of deadly force against DECEDENT was excessive and objectively unreasonable under the circumstances, especially because DECEDENT was unarmed, housed within the jail facility of Defendant CITY, and did not pose an immediate threat of death or serious bodily injury to anyone at the time of the tasing.

17.   The City of Long Beach, Long Beach Police Department Commanders, Captains, and other high ranking supervisors of the Long Beach Police Department negligently failed to train Long Beach Police Officers, such as DOES 1 through 10, in conformity with POST training standards regarding **proper police tactics**, proper use of force, proper use of deadly force, and proper police tactics in the use of a Taser gun; negligently failed to properly train City of Long Beach Police Officers, such as DOES 1 through 10, to **de-escalate** situations and interactions with jail detainees that are in the care and custody of the City of Long Beach, so as to avoid the use of force and the use of deadly force. These negligent failures of the City of Long Beach caused Long Beach Police Department Officers, such as DOES 1 through 10, to **escalate** their interactions with jail detainees and to overreact thereby resulting in the use of force when the use of force, and the use of deadly force, was not necessary.

18.   These negligent failures to properly train City of Long Beach Police Officers, such as DOES 1 through 10, was the proximate cause of the death of ALAN RAMOS, who was killed by Long Beach Police Officers, DOES 1 through 10 on November 11, 2018. These failures to train by CITY manifested a deliberate

1    indifference to the civil rights of the residents of the City of Long Beach.

2        19.    Defendants did not timely summon medical care or permit medical

3    personnel to treat DECEDENT, even though he was clearly in need of medical

4    attention resulting from having a Taser gun being deployed and the Taser gun darts

5    entering into and unto his body. The use of a Taser gun and the ensuing darts making

6    contact with the DECEDENTS' body caused the DECEDENT to suffer in health and

7    wellness, thereby necessitating the use of medical care. The CITY and Does 1

8    through 10 delayed medical care to DECEDENT which caused the DECEDENT

9    extreme physical and emotional pain and suffering, and was thus a contributing cause

10    of DECEDENT's serious and deadly injuries which ultimately caused his death.

11        20.    The Plaintiff A.R. was dependent upon DECEDENT.

12        21.    Plaintiff ALMEIDA is DECEDENT's successors-in-interest as defined

13    in Section 377.11 of the California Code of Civil Procedure and succeeds to

14    DECEDENT's interest in this action as the natural mother  of DECEDENT.

15        22.    Plaintiff A.R. is DECEDENT's successors-in-interest as defined in

16    Section 377.11 of the California Code of Civil Procedure and succeeds to

17    DECEDENT's interest in this action as the natural born child of DECEDENT.

18    ## **FIRST CLAIM FOR RELIEF**

19    **Fourth Amendment —Search and Seizure (42 U.S.C. § 1983)**

20    (By Plaintiffs against Defendants CITY and DOES 1 through 10)

21        23.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

22    through 22 of this Complaint with the same force and effect as if fully set forth

23    herein.

24        24.    On November 11, 2018 Defendants DOES 1 through 10 shot at the

25    DECEDENT with a Taser gun, they caused the DECEDENT to suffer a painful

26    physical reaction causing the DECEDENT to become unresponsive and to suffer in

27    his mind and body, ultimately causing the his death. This ***unjustified*** use of force

28    against the DECEDENT violated the DECEDENT's right to be secure in his person

against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

25.    The conduct of Defendants DOES 1 through 10 was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1 through 10 .

26.    As a result of their misconduct, Defendants DOES 1 through 10 are liable for DECEDENT's injuries, either because they were integral participants in the wrongful application of excessive deadly force upon the DECEDENT, or because they failed to intervene to prevent these violations.

27.    As a direct and proximate cause of the acts of CITY and DOES 1 through 10, Plaintiffs have been deprived of the life-long loss of DECEDENT's love, companionship, comfort, care, affection, society, moral support, and DECEDENT'S training and guidance, and will continue to be so deprived for the remainder of their natural lives. The Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. The Plaintiffs also seek attorney's fees.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment —Excessive Force (42 U.S.C. § 1983)

(By Plaintiffs against Defendants CITY and DOES 1 through 10)

28.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 27 of this Complaint with the same force and effect as if fully set forth herein.

29.    On November 11, 2018, Defendants DOES 1 through 10 used excessive force against the DECEDENT with DOES 1 through 10's unjustified use of a Taser gun upon the DECEDENT'S body when the DECEDENT posed no threat to CITY

1   officers or others and further, by the use of deadly force causing the DECEDENT to

2   suffer severe injuries to his body, which in turn caused the DECEDENT to become

3   unresponsive and ultimately led to his death.  This excessive use of force used by

4   DOES 1 through 10 caused the DECEDENT to suffer the negative effects caused by

5   the use of a Taser gun on the DECEDENT. Defendant's unjustified use of force

6   deprived DECEDENT of his right to be secure in his person against unreasonable

7   excessive force as guaranteed to him under the Fourth Amendment to the United

8   States Constitution and applied to state actors by the Fourteenth Amendment.

9       30.    Each of the DOES 1 through 10 integrally participated and/or failed to

10   intervene when excessive force was used against the DECEDENT.

11       31.    As a result of the foregoing, DECEDENT suffered great physical pain

12   and emotional distress up to the time of his death, loss of enjoyment of life, loss of

13   life, and loss of earning capacity.

14       32.    The conduct of Defendants DOES 1 through 10 was willful, wanton,

15   malicious, and done with reckless disregard for the rights and safety of the

16   DECEDENT, and therefore warrants the imposition of exemplary and punitive

17   damages as to Defendants DOES 1 through 10.

18       33.    The use of force was excessive and unreasonable, primarily because

19   DECEDENT posed no immediate threat of death or serious bodily injury at the time

20   of the tasing. DECEDENT was <u>unarmed</u> at the time that Defendants DOES 1-10 used

21   force against him and in custody at Defendant CITY's jail facility.  Further,

22   Defendants DOES 1 through 10's use of force violated their training and standard

23   police officer training with regard to the use of deadly force.

24       34.    As a direct and proximate cause of the acts and omissions of CITY and

25   DOES 1 through 10, Plaintiffs have been deprived of the life-long loss of

26   DECEDENT's love, companionship, comfort, care, affection, society, moral support,

27   and DECEDENT'S training and guidance, and will continue to be so deprived for the

28   remainder of their natural lives. The Plaintiffs bring this claim as DECEDENT's

1   successors-in-interest as defined in Section 377.11 of the California Code of Civil

2   Procedure and seek survival damages for the violation of DECEDENT's rights. The

3   Plaintiffs also seek attorney's fees.

### THIRD CLAIM FOR RELIEF

4

**Fourth and Fourteenth Amendment-Denial of Medical Care (42 U.S.C. § 1983)**

5

(By Plaintiffs against Defendants CITY and DOES 1 through 10)

6

7       35.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

8   through 34 of this Complaint with the same force and effect as if fully set forth

9   herein.

10      36.    At the time of his death, based on information and belief, DECEDET

11   Ramos was a pretrial detainee.

12      37.    "A prison that deprives prisoners of basic sustenance, including

13   adequate medical care, is incompatible with the concept of human dignity and has no

14   place in civilized society." *Brown v. Plata*, 131 S. Ct. 1910, 1928 (1011).

15   Accordingly, the Fourteenth Amendment to the United States Constitution protects

16   the right of pretrial detainees to adequate medical care.  Claims of pretrial detainees

17   are analyzed under the Fourteenth Amendment Due Process Clause, rather than

18   under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 510, 535 n. 16 (1979); *Frost*

19   *v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.1998); *Carnell v. Grimm*, 74 F.3d 977, 979

20   (9th Cir.1996); *Gibson v. Cnty. of Washoe*, Nev., 290 F.3d 1175, 1187 (9th Cir.

21   1002).

22      38.    Throughout the duration of Mr. Ramos's detention, he had the

23   established right to adequate medical care for his medical needs, including any

24   effects from the use of a Taser gun upon his body.

25      39.    DOES 1 through 10 are each responsible for the denial of adequate

26   medical care to Mr. Ramos either because they themselves failed to provide or

27   obtain adequate medical care, because they were integral participants in the denial of

28   adequate medical care, or because they failed to intervene to prevent the denial of

1  adequate medical care.

2      40.    The aforementioned Defendants' failure to provide proper and necessary

3  medical care caused Mr. Ramos serious bodily harm and death. The aforementioned

4  denial of medical care violated Mr. Ramos's right to Due Process under the

5  Fourteenth Amendment.

6      41.    The denial of medical care by Defendants DOES 1 through 10 after the

7  use of a Taser gun upon the DECEDENT deprived him of his right to be secure in

8  his person against unreasonable searches and seizures as guaranteed to him under the

9  Fourth Amendment to the United States Constitution and applied to state actors by

10  the Fourteenth Amendment.

11      42.    As a result of the foregoing, the DECEDENT suffered blunt force

12  trauma, great physical pain and emotional distress up to the time of his death, loss of

13  enjoyment of life, loss of life, and loss of earning capacity.

14      43.    Defendants DOES 1 through 10's failure to provide timely medical

15  treatment to DECEDENT resulted in further significant injury and the unnecessary

16  and wanton infliction of pain, in that they willfully disregarded that serious medical

17  attention was needed, thereby causing the DECEDENT great bodily harm and death.

18      44.    The conduct of the aforementioned Defendants was malicious,

19  oppressive, and in reckless disregard for the rights and safety of DECEDENT, and

20  therefore warrants the imposition of exemplary and punitive damages against DOES

21  1 through 10, either because they were integral participants in the wrongful denial of

22  medical care, or because they failed to intervene to prevent these violations.

23      45.    Accordingly, Defendants DOES 1through 10 each are liable to Plaintiffs

24  for compensatory and punitive damages, including survival damages (loss of life,

25  loss of enjoyment of life, and pre-death pain and suffering) under 42 U.S.C. § 1983

26  and California Code of Civil Procedure § 377.30 and § 377.60.

27      46.    As a direct and proximate cause of the acts of CITY and DOES 1

28  through 10, Plaintiffs have been deprived of the life-long loss of DECEDENT's love,

companionship, comfort, care, affection, society, moral support, and DECEDENT'S training and guidance, and will continue to be so deprived for the remainder of their natural lives. The Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. §1988, costs, and interest.

## FOURTH CLAIM FOR RELIEF

### Fourteenth Amendment—Substantive Due Process (42 U.S.C. § 1983)

(By Plaintiffs against Defendants CITY and DOES 1 through 10)

47.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 46 of this complaint with the same force and effect as if fully set forth herein.

48.    Plaintiffs ALMEIDA and A.R. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in the Plaintiffs' familial relationship with their son and father, DECEDENT Alan Ramos.

49.    DECEDENT himself had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

50.    The aforementioned actions of CITY and DOES 1 through 10, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and the Plaintiffs and with purpose to harm, unrelated to any legitimate law enforcement objective.

51.    As a direct and proximate result of these actions, the DECEDENT experienced pain and suffering prior to death, and eventually died.  Defendants CITY and DOES 1 through 10 violated the substantive due process rights of Plaintiffs to be

1  free from unwarranted interference with their familial relationship with the

2  DECEDENT.

3      52.   As a direct and proximate cause of the acts of CITY and DOES 1

4  through 10, Plaintiffs have been deprived of the life-long loss of DECEDENT's love,

5  companionship, comfort, care, affection, society, moral support, and DECEDENT'S

6  training and guidance, and will continue to be so deprived for the remainder of their

7  natural lives.  Accordingly, Defendants DOES 1 through 10 each are liable to

8  Plaintiffs for compensatory and punitive damages, including wrongful death

9  damages, under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.60.

10 Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in

11 Section 377.11 of the California Code of Civil Procedure and seeks survival damages

12 for the violation of DECEDENT's rights. Plaintiffs also seek reasonable attorneys'

13 fees pursuant to 28 U.S.C. § 1988, costs, and interest.

14                 **FIFTH CLAIM FOR RELIEF**

15     **Municipal Liability – Ratification (42 U.S.C. § 1983)**

16     (By Plaintiffs against Defendants CITY and DOES 1 through 10)

17     53.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

18 through 52 of this Complaint with the same force and effect as if fully set forth

19 herein.

20     54.   Defendants DOES 1 through 10 acted under color of law. The acts of

21 Defendants DOES 1 through 10 deprived DECEDENT and Plaintiffs of their

22 Constitutional rights under the United States Constitution.

23     55.   Upon information and belief, top management policymakers of

24 Defendant CITY, acting under color of law, who had final policymaking authority

25 concerning the acts of Defendants DOES 1 through 10, ratified the acts of

26 Defendants DOES 1 through 10, and the basis for the acts.  Upon information and

27 belief, the final policymakers of the CITY knew of and specifically approved of

28 Defendants DOES' acts.

56.    Upon information and belief, a final policymaker of the CITY has determined that the acts of Defendants DOES 1 through 10 were "within policy."

57.    As a direct and proximate cause of the acts of CITY and DOES 1 through 10, Plaintiffs have been deprived of the life-long loss of DECEDENT's love, companionship, comfort, care, affection, society, moral support, and DECEDENT'S training and guidance, and will continue to be so deprived for the remainder of their natural lives.  The aforementioned acts and omissions also caused DECEDENTS' pain and suffering, loss of enjoyment of life, and death.

58.    Accordingly, Defendants CITY and DOES 1 through 10 each are liable to the Plaintiffs for compensatory damages under 42 U.S.C. § 1983; and the Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seeks survival damages for the violation of DECEDENT's rights.  Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(By Plaintiffs against Defendant CITY and DOES 1 through 10)

59.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 58 of this Complaint with the same force and effect as if fully set forth herein.

60.    Defendants DOES 1 through 10 acted under color of law and the acts of Defendants DOES 1 through 10 deprived DECEDENT and Plaintiffs of their Constitutional rights under the United States Constitution.

61.    The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal. Defendant CITY was deliberately indifferent to the known or obvious consequences of its failure to adequately train its officers.

COMPLAINT FOR DAMAGES

62.     The negligent and unjustified use of force by DOES 1 through 10 was a result of the negligent training by Defendant CITY who failed to train CITY police officers DOES 1 through 10 as to *proper police tactics*, proper use of force, proper use of deadly force and proper police tactics in the use of a Taser gun. Defendant CITY was responsible for the training of its police officers to ensure that the actions, procedures, and practices of DOES 1 through 10 complied with Peace Officer Standards and Training (POST) training standards regarding proper police tactics and proper use of deadly force.

63.     Defendant CITY negligently failed to train CITY police officers, such as DOES 1 through 10, to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper police tactics in the use of a Taser gun. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of Defendant CITY were not adequate to train its police officers to handle the usual and recurring situations with residents that DOES 1 through 10 have contact with.

64.     The training policies of Defendant CITY were deficient in the following ways:

(a) Defendant CITY failed to properly train City of Long Beach Police Officers, such as DOES 1 through 10, to *de-escalate* interactions with residents so that police officers do not *escalate* their interactions with residents and do not overreact and resort to use of force when the use of force was not necessary. Instead, DOES 1 through 10 escalated their interactions with DECEDENT.

(b) Defendant CITY failed to properly train City of Long Beach Police Officers, such as DOES 1 through 10, to not permit fear to reach the point of becoming *unreasonable fear*, and not objectively reasonable, which would result in the use of force to cause the death of residents, such as DECEDENT. This was a part of Defendant CITY's negligent failure to train DOES 1 through 10 to properly and *adequately assess* the need to use force against persons such as DECEDENT.

(c) Defendant CITY failed to properly train CITY Police Officers, such as DOES 1 through 10, in *proper police tactics*, such as *situational awareness*, so that police officers, DOES 1 through 10, do not utilize negligent tactics, which is what DOES 1 through 10 did in this case. Because of this lack of proper training by Defendant CITY DOES 1 through 10 did not use proper police tactics in the handling of their contact and interaction with DECEDENT. Instead, DOES 1 through 10 used *defective* police tactics, including the lack of a *situational awareness* by DOES 1 through 10. These training failures by Defendant CITY, and defective tactics by DOES 1 through 10, resulted in the death of DECEDENT.

(d) Defendant CITY failed to properly train City of Long Beach Police Officers, such as DOES 1 through 10, the importance of *effective communication* prior to using any type of force.

(e) Because of the lack of proper training by CITY of Officers DOES 1 through 10, DOES 1 through 10 did not use effective communication prior to and during the use of force against DECEDENT. This *ineffective* communication of information by DOES 1 through 10, prior to and during the incident, resulted in the death of DECEDENT.

65.    The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiffs' rights by Defendants DOES 1 through 10; that is, Defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injuries to Plaintiffs.

66.    By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

67.    Accordingly, Defendants CITY and DOES 1 through 10, each are liable to the Plaintiffs for compensatory damages under 42 U.S.C. § 1983. Plaintiffs bring these claims as DECEDENT's successors-in-interest as defined in Section 377.11 of

the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

**<u>SEVENTH CLAIM FOR RELIEF</u>**

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By Plaintiffs against Defendants CITY and DOES 1 through 10)

68.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 67 of this Complaint with the same force and effect as if fully set forth.

69.     Defendants DOES 1 through 10 acted under color of law;

70.     Defendants DOES 1 through 10 acted pursuant to a widespread and longstanding practice or custom which caused the deprivation of the Plaintiffs' and the Decedent's rights.  The CITY's widespread and longstanding practice or custom is so closely related to the deprivation of the Plaintiffs' and the Decedent's rights as to be the moving force that caused the Decedent's death.

71.     On information and belief, Defendants DOES 1 through 10 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

72.     Defendants CITY and DOES 1 through 10, together with other CITY policymakers and supervisors, maintained, *inter alia*, the following unconstitutional customs, practices, and policies:

(a)     Using excessive force, including excessive deadly force;

(b)     Providing inadequate training regarding the use of force and the risks of use of a Taser gun;

(c)     Employing and retaining as police officers individuals such as Defendants DOES 1 through 10, who Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)     Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including Defendants DOES 1 through 10, who Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY officers, Defendants DOES 1 through 10;

(f)     Failing to adequately discipline CITY police officers, including Defendants DOES 1 through 10, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)     Announcing that unjustified uses of force are "within policy," including uses of force that were later determined in court to be unconstitutional;

(h)     Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i)     Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing.

(j)    Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of incidents of excessive force by police officers, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in use of excessive force against unarmed people.

73.    By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

74.    Defendants CITY and DOES 1 through 10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

75.    The following are only a few examples of continued misconduct by officers working for Defendant CITY.  These examples demonstrate an unconstitutional custom, policy, and practice of using deadly force against unarmed civilians, and ratifying that use of deadly force and/or finding the use of deadly force to be justified or "within policy":

a) In *Zerby v. City of Long Beach*, case number 13-56882 (9th Cir.2016), the City argued that use of deadly force against Mr. Zerby made by officers for LBPD was lawfully made in self-defense and in the defense of others.  After one day of deliberations, a jury disagreed and found that

the LBPD officers violated the civil rights of Zerby and awarded his family, including the minor son of Zerby a $6.5 million settlement.

b) In *Saycon v. City of Long Beach,* case number 2:16-cv-05614 JFW (ASx), the City argued that the shooting death of Mr. Saycon was justified because Mr. Saycon was waving a knife around and when told by officers to drop the knife Mr. Saycon did not drop the knife, to which he subsequently was tased, beaten with a baton, and was shot at by one of the LBPD officers. The City settled with the Saycon family for a $2 million settlement.

c) In *Estate of Pream v. City of Long Beach,* case number 2:17-cv-04295, the jury unanimously found that the shooting by the officers was done with "malice and oppression as well as it "shocked the conscience," which led to a jury verdict for the family of the deceased a $9 million settlement award.

76. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 1 through 10 acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOES 1 through 10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

77. Accordingly, Defendants CITY and DOES 1 through 10 are liable to Plaintiffs for compensatory damages, including survival damages (for the decedent's loss of life, loss of enjoyment of life, and pre-death pain and suffering) and wrongful death damages (the life-long deprivation of the decedent's comfort, support, society, care and sustenance) under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60. By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care,

society, training, guidance, and moral support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

78.    Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seek survival damages for the violation of DECEDENT's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. §1988, costs, and interest.

## EIGHTH CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against Defendants CITY and DOES 1 through 10)

79.    Plaintiffs repeat and re-alleges each and every allegation in paragraphs 1 through 78 of this Complaint with the same force and effect as if fully set forth herein.

80.    Defendants DOES 1- 10, while working as officers for the LBPD and acting within the course and scope of their duties, intentionally deprived DECEDENT of his freedom of movement by use of force, threats of force, menace, fraud, deceit, and unreasonable duress.

81.    DECEDENT did not knowingly or voluntarily consent.

82.    Defendant CITY is vicariously liable for the wrongful acts of Defendant DOES 1 through 10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

83.    As a result of their misconduct, Defendants DOES 1 through 10 are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

84.    Plaintiffs bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seeks both survival and wrongful death damages for the violation of DECEDENT's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to C.C.P. Section 1021.5, costs, and interest.

### NINTH CLAIM FOR RELIEF

**Battery (Wrongful Death)**

(By Plaintiffs against Defendants CITY and DOES 1 through 10)

85.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 84 of this Complaint with the same force and effect as if fully set forth herein.

86.    DOES 1 through 10, while working for the Long Beach Police Department and acting within the course and scope of their duties, intentionally Tased DECEDENT multiple times, thereby causing the DECEDENT to suffer the ill effects of being tased, all while DECEDENT was underlined arm and posed no threat to LBPD officers or others, thereby using unreasonable and excessive force against DECEDENT.  As a result of the actions of DOES 1 through 10, the DECEDENT suffered severe pain and suffering, including blunt force trauma caused by the Taser darts upon and his body, which ultimately caused the DECEDENT his loss of life from said injuries.  DOES 1 through 10 had no legal justification for using such excessive force against DECEDENT, and this use of force while carrying out their duties as police officers was an unreasonable and non-privileged use of force.

87.    DOES 1 through 10 integrally participated and/or failed to intervene.

88.    As a direct and proximate result of the conduct of DOES 1 through 10 and as alleged above, DECEDENT sustained injuries and died from his injuries and also lost his earning capacity.  Also as a direct and proximate result of the conduct of DOES as alleged above, DECEDENT suffered survival damages pursuant to Code of Civil Procedure Section 377.34.

89.    CITY is vicariously liable for the wrongful acts of Defendants DOES 1 through 10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

90.    By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death. Plaintiffs also bring this claim as DECEDENT's successors-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and seeks both survival and wrongful death damages for the violation of DECEDENT's rights. Plaintiffs also seek reasonable attorneys' fees pursuant to C.C.P. Section 1021.5, costs, and interest.

## TENTH CLAIM FOR RELIEF

### Negligence (Wrongful Death)

(By Plaintiffs against Defendants CITY and DOES 1 through 10)

91.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 90 of this Complaint with the same force and effect as if fully set forth herein.

92.    Police officers, including Defendants DOES 1 through 10, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

93.    Defendant DOES 1 through 10 breached this duty of care. The actions and inactions of Defendant DOES 1 through 10 were negligent and reckless.

94.    Defendants CITY of LONG BEACH, and DOES 1-10, knew that by acting as sworn officers under the color of law, they were charged with ensuring the

safety and well-being of DECEDENT. Defendants CITY of LONG BEACH, and DOES 1-10 had the duty to protect and ensure the safety of residents, such as DECEDENT, including but not limited to:

        a. The duty to properly train City of LONG BEACH Police Officers, such as DOES 1-10, in conformity with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures to protect and ensure the safety of residents, of the City of LONG BEACH, such as DECEDENT.

        b. The duty to properly train City of LONG BEACH Police Officers, such as DOES 1-10, to *de-escalate* situations and interactions with City of Long Beach Angeles residents so as to avoid the use of force, and the use of deadly force to protect and ensure the safety of residents of the City of Long Beach, such as DECEDENT.

95.    The duty to protect and ensure the safety of the residents of the City of Long Beach, such as DECEDENT, were breached by the acts and omissions of Defendants CITY of LONG BEACH, and DOES 1-10, by inter alia:

        a. The negligent failures to properly train City of LONG BEACH Police Officers, such as DOES 1-10, by the CITY of LONG BEACH caused LONG BEACH Police Department Officers, such as DOES 1-10, to *escalate* their interactions with residents and to overreact and resort to use of excessive force when use of force is not necessary.

        b. The negligent failures of DOES 1-10 to properly and adequately *assess* the need to use force, against DECEDENT, when DOES 1-10 detained DECEDENT, and the negligent handling of the situation when DOES 1-10 used excessive force against DECEDENT who was killed by DOES 1-10, including the pre-shooting lack of *situational awareness* by DOES 1-10 because DECEDENT was <u>unarmed</u> when DOES 1-10,

who were not properly trained by CITY, came up to DECEDENT and used excessive force against DECEDENT.

c. The negligent ***communication of information*** by DOES 1-10 before and during the incident, which was also part of the negligent failures of the situational awareness by DOES 1-10.

d. The use of force by DOES 1-10 when none was necessary.

e. The negligent detention, arrest, and use of excessive force by DOES 1-10 against DECEDENT.

f. The negligent failure to provide and/or summon prompt medical care to DECEDENT by DOES 1-10.

g. The negligent failures of the CITY of LONG BEACH to properly train and supervise its Police Officers, such as DOES 1-10.

h. The failure to ensure that adequate numbers of Police Officers with appropriate POST education and POST training were available to ensure the safety of DECEDENT.

i. The negligent handling of evidence, witnesses, and negligent failures of the CITY of LONG BEACH in the investigation of the death of DECEDENT.

j. The failure to properly and adequately assess the need to use excessive force and/or deadly force against DECEDENT;

k. The negligent tactics and handling of the situation with DECEDENT, including the negligent use of a Taser gun;

l. The negligent ***communication of information*** during the incident;

96.    As a direct and proximate result of Defendants' conduct as alleged above, and other negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.  Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care and moral support of

1  DECEDENT, and will continue to be so deprived for the remainder of their lives.

2      97.    The CITY is vicariously liable for the wrongful acts of DOES 1-10,

3  who are the employees of each municipality, respectively, pursuant to sections §

4  815.2, § 810, and § 845.6 of the California Government Code. Government Code §

5  810, subdivision (a) provides that except as otherwise statutorily provided, "a public

6  employee is liable for injury caused by his act or omission to the same extent as a

7  private person." Subdivision (a) of section 815.2 provides that the entity "is liable for

8  injury proximately caused by an act or omission of an employee of the public entity

9  within the scope of his employment if the act or omission would ... have given rise to

10  a cause of action against that employee..." The general rule is that an employee of a

11  public entity is liable for the employee's torts to the same extent as a private person §

12  810(a); and the public entity is vicariously liable for any injury which its employee

13  causes § 815.2(a) to the same extent as a private employer Government Code §

14  815(b). The CITY is liable for the acts of its own employees, DOES 1-10.

15      98.    Defendants CITY and DOES 1 through 10 each are liable to Plaintiffs

16  for compensatory damages, including both survival damages pursuant to California

17  Code of Civil Procedure § 377.30 and wrongful death damages pursuant to California

18  Code of Civil Procedure § 377.60. Plaintiffs bring this claim as DECEDENT's

19  successors-in-interest as defined in Section 377.11 of the California Code of Civil

20  Procedure seeks both survival and wrongful death damages for the violation of

21  DECEDENT's rights.  Plaintiffs also seek reasonable attorneys' fees pursuant to

22  C.C.P. Section 1021.5, costs, and interest.

23  **ELEVENTH CLAIM FOR RELIEF**

24  **(Violation of Cal. Civil Code § 52.1)**

25      (By Plaintiff against Defendants CITY and DOES 1 through 10)

26      99.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

27  through 98 of this Complaint with the same force and effect as if fully set forth

28  herein.

100.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

101.   California Civil Code, Section 52.1 (the Bane Act), applies to this Complaint with the same force and effect as fully set forth herein:

(a)   If a person or person, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals or rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state... a civil action for injunctive and other appropriate equitable relief may be brought.

102.   Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

103.   The Bane Act, the California Constitution and California common law prohibit the use of excessive force by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims. See *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (1995). "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City Of LONG BEACH*, 751 F.3d 1096, 1105-06 (9th Cir. 1014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.1013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. County. of L.A.*, 217

1  Cal.App.4th 968, 976 (1013) ("an unlawful [seizure] when accompanied by

2  unnecessary, deliberate and excessive force—is within the protection of the Bane

3  Act").

4       104.   DOES 1 through 10 violated DECEDENT'S Fourth Amendment rights

5  to be free from unreasonable seizures when DOES 1 through 10 used excessive

6  force against DECEDENT because of his Latino ethnicity, causing his death.

7       105.   DECEDENT was caused to suffer severe pain and suffering and

8  ultimately died for which he, by Plaintiffs as his successors-in-interest, are entitled

9  to recover survival damages.

10       106.   The conduct of Defendants DOES 1 through 10 was a substantial

11  factor in causing the harm, losses, injuries, and damages of DECEDENT.

12       107.   The City of Long Beach is vicariously liable for the wrongful acts of

13  DOES 1 through 10 pursuant to section 815.2(a) of the California Government

14  Code, which provides that a public entity is liable for the injuries caused by its

15  employees within the scope of the employment if the employee's acts would subject

16  him or her to liability.

17       108.   On information and belief, Defendants DOES 1 through 10, inclusive,

18  while working for the CITY and acting within the course and scope of their duties,

19  intentionally committed and attempted to commit acts of violence against

20  DECEDENT, which included the unnecessary use of lethal and deadly force upon

21  an unarmed and non-violent individual without justification or excuse, by integrally

22  participating and failing to intervene in the above violence, and by denying him

23  necessary medical care.

24       109.   When Defendants DOES 1 through 10 unnecessarily Tased the

25  DECEDENT, this caused the DECEDENT to suffer the ill effects of being Tased.

26  This act perpetrated against an **unarmed** and non-violent detainee by the Defendants

27  DOES 1 through 10 interfered with DECEDENTS' civil rights to be free from

28  unreasonable searches and seizures, to due process, to equal protection of the laws,

1  to medical care, to be free from state actions that shock the conscience, and to life,

2  liberty, and property.

3      110.   On information and belief, Defendants intentionally and spitefully

4  committed the above acts to discourage DECEDENT from exercising his civil

5  rights, to retaliate against him for invoking such rights, or to prevent him from

6  exercising such rights, which he was fully entitled to enjoy.

7      111.   Defendants thus successfully interfered with the above civil rights of

8  DECEDENT and the Plaintiffs.

9      112.   Defendant DOES 1 through 10 are vicariously liable under California

10  law and the doctrine of *respondeat superior*.

11      113.   The Plaintiffs bring this claim as DECEDENT's successors-in-interest

12  as defined in Section 377.11 of the California Code of Civil Procedure and seeks

13  both survival and wrongful death damages for the violation of DECEDENT's rights.

14  Plaintiffs also seek reasonable attorneys' fees pursuant to C.C.P. Section 1021.5,

15  costs, and interest.

16  ## PRAYER FOR RELIEF

17      WHEREFORE, Plaintiffs JACKELINE ALMEIDA and JOHN A.R. DOE in

18  each case individually and as successors-in-interest to ALAN RAMOS, deceased,

19  request entry of judgment in their favor and against Defendants CITY OF LONG

20  BEACH and DOES 1 through 10, inclusive, as follows:

21          A.   For compensatory damages in whatever amount may be proven

22              at trial, including both survival damages and wrongful death

23              damages under federal and state law;

24          B.   For noneconomic damages in whatever amount may be proven at

25              trial,

26          C.   For statutory damages;

27          D.   For interest;

28

COMPLAINT FOR DAMAGES

E.   For reasonable attorneys' fees under 42 U.S.C. § 1988, and under California Civil Code, Section 52.1 (the Bane Act);

F.   For costs of suit; and

G.   For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  9/30/2019                    CARRILLO LAW FIRM, LLP.

                                     By
                                        Luis A. Carrillo
                                        Attorney for Plaintiffs

-29-
COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury.

DATED:  9/30/2019                    CARRILLO LAW FIRM. LLP.


                                     By
                                       Luis A. Carrillo
                                       Attorney for Plaintiffs

COMPLAINT FOR DAMAGES